Local governments cannot tax federal lands located within their jurisdictions. However, they must still provide services, such as police, fire, search and rescue, with respect to those lands. A perfect example is the recent rescue of climbers on Mount Hood, which is located in the National Forest. That's all very nice, Mr. Saltzman. I'm sorry, Your Honor? That's all very nice, but you've got a statute here. Yes, Your Honor. I think my microphone is hit, or maybe inoperative. In any event, you've got a statute here which limits compensation to what's available in the appropriation laws. No, it does not. Does not? It limits the amount that is available to the Secretary of the Interior to what is appropriate. It does not limit the obligation of the United States. Your Honor, if I might. But isn't this, you're familiar with STARGLOW. I certainly am. But isn't the language here, and STARGLOW involves the question whether there's a statutory cap, which really this case also involves. I don't think that it does, but Your Honor. It doesn't involve a statutory cap? No, I don't think it involves a statutory cap at all. No, no, I understand you think it doesn't, but the question is whether it does, right? I wouldn't use that terminology. I would say whether or not it limits the obligation created by the United States. Okay, but the cases refer to that as whether there's a statutory cap. I think that there's a distinction between the two. Maybe it's a distinction without a difference. Okay, but so the language in STARGLOW seems to be somewhat similar to the language here, and we held in STARGLOW that that created a statutory cap. I think, Your Honor, that in that case really went off on whether or not the company that was seeking the additional monies did in fact meet the definition. And I think that the court said no, that acres were acres that were planted, not the whole acreage. Well, that was the other part of the case. Well, I think that was the whole of the case. The first part of the case involved the question of whether there was a statutory cap. It did. And the language of the statute there and the language of the committee report, the conference report that was found to confirm there was a statutory cap, is very similar to the language here, isn't it? No, I don't think so, Your Honor. The language there said that the Secretary of Agriculture shall use $58 million of funds to carry out this section. I don't think we have that at all. I think what we have here is a statute that in 6902 says the Secretary shall make payments to eligible counties pursuant to the formula set forth in 6903. It goes on to say that amounts are available only as provided in appropriation law. That is indicating that amounts are available to the Secretary for purposes of making the payment only as provided. But it does not change the obligation. But the language in Stark Law was directed to the Secretary also. What language is Your Honor referring to? It says the Secretary of Agriculture shall use $58 million to carry out this section to remain available until expended. That's correct, Your Honor. And then the language of the committee report said directs the Secretary to use not more than $58 million. We held that was a statutory cap. Why isn't the language here very similar to that? Because there is no dollar limit set forth there. What we have here, Your Honor, is exactly the same case as the Court of Claims dealt with in New York Airways. That said, that the Secretary, I'm sorry, the Secretary of the Board shall make payments of a subsidy amount out of appropriations made to the Board for that purpose. Congress did not see fit in that year to appropriate sufficient monies. However, the Court of Claims said that it was an obligation of the United States, an appropriated entitlement, and hence the New York Airways could file suit and did prevail in that case. In that sense, the language in New York Airways in that statute is identical or virtually identical to that set forth in PILT. I think that's a much closer analogy than is Stark Law. But the language in New York Airways didn't say only out of appropriations. That's correct, Your Honor. Here we have the language amounts are available only. Only is provided in appropriations. I would submit to you, Your Honor, that there is a distinction there about the difference. To say that the language that amounts are to come out of appropriations does not mean anything substantially different from the amounts that should only come from appropriations. So you're saying maybe there's a hole in the statute. What about the regulation, then, which provides if Congress appropriates insufficient monies to provide full payment, the department will reduce proportionally all payments in that fiscal year? That language was in one of the prior versions of the statute. It was not enacted by Congress, first and foremost. Well, regulations are entitled to deference. They are, Your Honor, to the extent that the Congress asks for an interpretation of the statute. That regulation does not in and of itself say whether or not we have an entitlement program or an obligation here. What it does do, it's a housekeeping statute that says when there is not enough money in the checking account, you will divide it relatively equally amongst the counties. However, that does not change the obligation that was created by Congress in 6902. As a matter of fact, doing what that regulation says is exactly what GAO says must be done whenever you have a shortfall in a statutory program. But you agreed that if this language here was subject to available appropriations or subject to the availability of appropriations, you would lose. Absolutely, Your Honor. And that's a big distinction. As Your Honor knows, in the Ogalla Sioux case, the Cherokee Nation case, which dealt with the Indian Self-Determination Act, that very language was used. That is the standard language by which Congress limits and conditions obligations that putatively are created. What's the difference between that language and this? All that we have here is a statement in 6906 that mounts shall be available to the Secretary from these appropriations. It does not condition the language of 6902. If Congress wanted to do that, they had two opportunities to do that, Your Honor. They had the original enactment of PILT in 1976, plus it was recodified in 1982. Wait, wait, wait. You're not addressing my question. Sorry, Your Honor. My question is you agree that subject to available appropriations would be a limitation. Yes. And we have the second sentence here, which says amounts are available only as provided in appropriations laws. What's the difference? Why are those two provisions any different? Your Honor, maybe I can put it in simpler terms. What we have here is a promise from the United States. We view the promise as analogous to this. I will pay $100 to everyone in this courtroom who has blue eyes. The money will come out of my checking account. That deals with the availability. The government would argue, and I think the government is incorrect, that the statute reads to the extent that I have money in my checking account, I will pay $100 to everyone in this courtroom with blue eyes. You're getting away from the two pieces of language that Judge Dykus compared, asking what their effective meaning, what the difference in their meaning is. You're creating a third. No, no, no, I'm trying to be responsive, Your Honor. Maybe I'm not succeeding. The subject to the availability says that funds will be provided subject to the availability. It is conditioning the provision of those funds. When the statute talks about availability, all it is saying is that here is the source of those funds. They will be annual appropriations. And that is the only source that you can use. Therefore, you cannot reprogram funds as was required in the Cherokee Nation case. You cannot reprogram, you cannot rob from Peter to pay Paul in terms of PILT. And that's what Congress was doing in the second sentence of 6906. They did not want the Interior Department to rob one program to pay the PILT program. So I think that you ask the question, well, why is this different than subject to the availability of appropriations? And there are at least two reasons why. You don't contend that this is a contract? No, Your Honor. It is an appropriated entitlement. It is no different in that respect than things like the student guarantee loan program where the United States says we will subsidize the interest paid. We will pay any lender who qualifies an amount in excess of that which the student pays. The purpose, of course, is to allow that lenders will get into the program. Similarly here, we have an appropriated entitlement because it says we will pay eligible counties the amount set forth in the formula in 6903. And once that criteria is met, then the obligation kicks in. It is no different than, as I said, in New York Airway. It's no different than in the student loan program. It's no different than in the Medicaid programs where, and it's no different than the cases we cited in our piece, GAO case with Walter Jones, which said that if you meet these criteria, you shall be entitled to the benefits of the statute whether or not an appropriation ever exists. GAO is very clear on this. And that's what we have here. If Congress wanted to condition the creation of the obligation, they could have done so. As I said, they had two opportunities. They had the original enactment and they had the recodification. They didn't do it. If that was a mistake, then it's up to Congress to change that, not the courts. The result we seek here is not absurd. It may be harsh, but it is not absurd. And under the Lamey case, as this Court is well aware, that your job is simply to enforce the law as written. Call balls and strikes.  Call balls and strikes. Well, we think that this is right down, right down the center of the plate, Your Honor. For which party? I think we would say for the economy, Your Honor. Your Honor, the purpose of, bear with me just a second. One of the purposes of PIP was to come in, the programs were not working. The government was funding these programs out of fee-sharing statutes. That would go up and down depending on the revenues in any given year, such as timber sales. If there were a lot of timber sales in one year, the revenue would be high. Do you want to use your rebuttal time now? Oh, I'm sorry, Your Honor. Just let me finish this point. What PIP was intended to do was to provide some certainty that the total amount of fees received by a county in any given year would equal X cents per acre of federal lands. By giving that certainty, counties could fund a program to provide services, police, fire and rescue. If this was subject to the whims of appropriations, the very purpose of enacting PILT would be disrupted. Mr. London? Good afternoon. Robert London, representing the United States. The core of federal claims is jurisdiction over damages claims, based on the statute, only if the statute includes a money-mandating... I don't understand the government's money-mandating argument here. I really don't. I mean, I thought that we'd cleared this up in Fisher. You agree, don't you, that if the appropriations were available and the government refused to pay, that the counties could sue in the court of claims and recover, right? I think I understand your hypothesis. If there was no section 6906... No, if the statute is written exactly the way it is now, but the appropriations were available and the government refused to pay, they could sue. It would be money-mandating, right? I think, in that sense, the breach would be one of a money-mandating duty. Yeah. So what we said in Fisher was, if the statute is money-mandating, that you don't look to see whether the plaintiff can recover in the particular case. That's a merits question, not a jurisdictional question. We said that explicitly in Fisher. And so the government keeps trying to argue that these things are jurisdictional, when it's really a question of whether they have a claim on the merits. My reading of Fisher is a little different, in that I think Fisher was saying that that question is the same for the merits and for jurisdiction. No, the question is the same as to whether the statute is money-mandating, but not whether the recovery can be allowed under the statute. Fisher specifically distinguishes between those two, and it says if the plaintiff loses on the merits, he doesn't lose on a jurisdictional ground, he loses on the merits. It says it explicitly. I'm not sure this is just an issue of recovery. I think this is also an issue of whether there's a breach of a statutory duty, whether that statutory breach of that duty is one of a money-mandating one. I think there are – excuse me – I think it's a – I understand the perspective, but I'm not sure that that's the way the government sees it. I think we think that Fisher says that the question of whether there's a breach of a money-mandating duty is both the merits question and a jurisdictional question. Why don't you use your time rebutting your opponent rather than getting into sticking with money-mandating? I'd be happy to do that. I think the key issue here is whether the amounts that are available only as provided in appropriation laws, which is the language in 6906, can have any different meaning than subject to appropriations. And I don't think it can. I think it expressly explains that counties and other local government units are only going to receive funds if the amounts are available as provided in appropriation laws. Here, some of the amounts the county claims it wants were not available and they didn't receive it, but that's no breach of the Penguin Rule of Taxes Act. Mr. Saltman at one point compared the earlier version of the PILT with the current version. Both of them included the same language in effect. In our brief, we quote the earlier version as well. It's not that one included it and one didn't. The current version speaks to amounts that are available only as provided in appropriation laws, but we think they have the same meaning. Amounts are available, but Mr. Saltman says it may not be available, but the government is obligated. Right. I don't think that's correct. Section 6902, which says the government shall make a payment, at the tail end of that sentence says, as in this chapter. And in this chapter, the chapter includes section 6906, and section 6906 conditions payments on the amounts that are appropriated. In the brief, they make a distinction between an obligation and the payment. I don't think that distinction's in the act. The act speaks about a payment in section 6902, refers to the rest of the chapter, and 6906 says payments are only as available in appropriation laws. Even assuming some ambiguity in the statute, we don't think there is any. But even assuming there is some, Interior, more than 25 years ago in its regulations, we think answered this question again, and explained that if amounts are appropriated that are less than what were provided for the payment as calculated in section 6903 of the act, that the amounts are proportionally reduced that the county receives. And we think that that, even if you assume some ambiguity, that the regulation takes care of that ambiguity and is entitled to deference as well. Unless the court has any more questions about their underlying claim here, I just want to touch on the issue of class certification. We've argued that because there's no jurisdiction that under Steel Company there should be no decision on class certification. Even putting aside the jurisdictional argument, we don't think there's any reason to say that the trial court here abuses discretion in not ruling out class certification. We really didn't get into that on the opening argument. Do you have any more to say in response to... I do not, unless the court has any other questions. Thank you. Ms. Altman? Your Honor, my opponent talked about the in this chapter language of 6902. We believe that that refers only to the formula in 6906. And it stems from the language of the original statute that talks about reference to the formula. The language in 6906, Your Honor, you must recall, is unique. It appears nowhere else in the whole of the United States Code. Unlike subject to the availability of appropriation, which appears no less than 268 times. If Congress wanted to condition the obligation, it certainly knew how. It had two opportunities to do so, and it didn't do it. Your Honor, with regard to class certification, I would say this... We're not going to get into that. We didn't bring it up in the first place. It's covered in the brief. Okay. I have nothing further to add, Your Honor. Thank you. Case is submitted.